UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD L. K.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 3:23-CV-358-SJF |

**OPINION and ORDER**

Plaintiff Richard K. ("Mr. K") seeks judicial review of the Social Security Commissioner's decision denying Mr. K's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This Court may enter a ruling based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). [DE 9, DE 22]. For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("SSA").

**I.    OVERVIEW OF THE CASE**

Mr. K filed applications for DIB and SSI on January 20, 2021, alleging disability beginning November 22, 2020. (Administrative Record 10; hereinafter "AR"). He was denied initially, on reconsideration, and at a hearing before Administrative Law Judge ("ALJ") Amy L. Rosenberg. (AR 20). The ALJ issued an unfavorable decision on August

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

1

29, 2022. (AR 1). Mr. K requested further review of the ALJ's decision, and the Appeals Council denied this request on March 2, 2023 (AR 1), leaving the ALJ's decision as the final decision of the Commissioner. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Mr. K filed suit in this court on May 3, 2023. This court has jurisdiction under 42 U.S.C. § 405(g).

## II.    APPLICABLE STANDARDS

### A.    Disability Standard

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based upon his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 4041520;

416.920.[2] The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

### B.    Standard of Review

The Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not

---

[2] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). On the other hand, "[a]n award of benefits is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion.: *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

**III.    DISCUSSION**

    **A.    Summary of the ALJ's Decision Denying Benefits**

Mr. K's online hearing before the ALJ on his DIB and SSI applications took place on July 1, 2022. Mr. K appeared virtually and was represented by his attorney. (AR 10). On August 29, 2022, the ALJ issued her written decision finding that Mr. K was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520. (AR 20).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Mr. K had not engaged in substantial gainful activity since his alleged onset date of November 22, 2020. (20 C.F.R. § 404.1571 et seq., and § 416.971 et seq.). The ALJ noted that Mr. K had worked after his alleged disability onset date but found that his work activity did not rise to the level of substantial gainful activity. (AR at 12).

At Step Two, an ALJ's inquiry focuses on whether the claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ concluded Mr. K suffered from the following severe impairments: lumbar degenerative disc disease with history of fusion; degenerative joint disease of the left knee with history of a partial knee replacement; bilateral plantar fascial fibromatosis and obesity (20 C.F.R. § 404.1520(c) and § 416.920(c)). The ALJ thus concluded that these medically determinable impairments

significantly limit Mr. K's ability to perform basic work activities as required by SSR 85-28.

The ALJ concluded at Step Three that Mr. K does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ found that the record did not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet or equal the criteria of any listed impairment. Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Mr. K can perform his past relevant work based on his residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite his limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ concluded that Mr. K retained the RFC to perform less than the full range of light work as defined in 20 CFR 404.1567(b). She determined that Mr. K could:

> lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently. He could stand and/or walk for a total of about 4 hours in an 8-hour workday, and could sit about 6 hours in an 8-hour workday. He

could occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. He could occasionally stoop, kneel, crouch, and crawl. He could only occasionally reach overhead. He should not work at unprotected heights, should not operate hazardous machinery, and should not work on rough, uneven, slippery, or shifting terrain. (AR 18).

Based on this RFC, at Step Four, the ALJ found that Mr. K was unable to perform his past relevant work as a bus driver, production worker, merchandise displayer, night auditor, and retail manager. (AR 18). Accordingly, the ALJ moved on to last step in the five-step sequential analysis to determine whether Mr. K could perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant number in the national economy that [the claimant] can do, given his residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also* *Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). The ALJ found that, while Mr. K could not perform any past relevant work, he retained the RFC to perform the jobs of parking lot attendant, ticket seller, and garment sorter. (AR 24).

Finding that Mr. K could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Mr. K was not under a disability, as defined in the Act, from his alleged onset date of November 22, 2020, through the date of the ALJ's decision. (AR 21).

B.  **Issues for Review**

Mr. K makes several arguments to contend that substantial evidence did not support the ALJ's decision to deny his applications for DIB and SSI.  Mr. K first argues

that the ALJ did not explain why she excluded these limitations from his RFC: his need to elevate his and legs, and his use of a cane. Mr. K also maintains that the ALJ improperly relied on his ability to do part-time work and his physical therapy goals to find that he retained an RFC for less than the full range of light work. Finally, Mr. K argues that the ALJ's evaluation of his daily living and treatment violated SSR 16-3 and was not supported by substantial evidence.

The Commissioner argues that the ALJ supported her determination of Mr. K's RFC with substantial evidence. The Commissioner maintains that the ALJ provided a narrative of the record — both medical and nonmedical evidence — that supported her finding that Mr. K could perform a restricted range of light work in accordance with Social Security Ruling (SSR) 96-8p. The Commissioner further argues that Mr. K failed to carry the burden through Step Four of the disability evaluation process. See 42 U.S.C. § 423(d)(5)(A). The Commissioner states that the ALJ sufficiently articulated and supported her subjective symptom assessment by discussing the relevant factors under SSR 16-3.

The Court now addresses each of Mr. K's arguments in turn.

### 1. Leg Elevation

Mr. K first argues that the ALJ failed to include an RFC limitation regarding Mr. K's need to elevate his legs and feet despite evidence supporting such a limitation. Mr. K contends that he was instructed to elevate his legs as needed to control swelling. (AR 630-32). Moreover, at the hearing, Mr. K testified he would have his feet in the air or bed because his feet were red and hot, and he also said that doctors instructed him to

elevate the lower extremities to relieve such symptoms. (AR 58). He also testified that he usually elevated his legs for an hour, if not longer. (AR 65-66). He contends that, despite this evidence, the ALJ did not discuss this limitation and accordingly failed to indicate whether she was even aware of the alleged limitation or evidence supporting it.

The ALJ did acknowledge Mr. K's testimony that he "would get the laundry ready and load the dishwasher, and otherwise, he would recline with his feet up or lie in bed." (AR 14). But Mr. K is correct that the ALJ did not discuss that Mr. K had been instructed by a doctor to elevate his legs. (*See* AR 630-632). The recommendation was made to Mr. K on June 1, 2022, during a post-operative visit and inspection of incisions from Mr. K's anterior lumbar interbody fusion performed on May 18, 2022. (*Id.*). During that visit, despite Mr. K's reports of significant pain, he also reported that his condition significantly improved. (AR 630). He also reported that "elevating makes it better, while lying on back, and standing at night makes it worse." His post-surgery treatment plan then included instructions "to elevate as needed to control swelling." (AR 632). Though the ALJ did not discuss the leg elevation instruction from this record, the ALJ did discuss that Mr. K underwent a lumbar spine fusion at L2-3 and discussed other post-operative instructions given to him, such as the fact that he was "limited to no lifting over 10 pounds, no heavy lifting, bending or twisting and no repetitive bending or twisting." (AR 18). Although the ALJ discussed these instructions, the ALJ also explained that these limitations were not persuasive because they were "temporary status post-surgery limits." (*Id.*).

9

The ALJ need not discuss every piece of evidence presented; rather, she must provide an accurate and logical bridge between the evidence and her conclusion. *Craft, 539 F.3d at 673*. Accordingly, while the ALJ did not specifically address this post-operative recommendation, the Court cannot find that she avoided discussing a line of evidence, especially considering the ALJ's overall discussion of Mr. K's lumbar fusion and other post-operative instructions given. *See Denton v. Astrue,* 596 F.3d 419, 426 (7th Cir. 2010); *see also Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009). Moreover, leg elevation was a temporary, post-operative instruction. Without more, the Court cannot find that the ALJ's failure to address the temporary leg elevation or include it in the RFC warrants remand. *See Britt v. Berryhill,* 889 F.3d 422, 426 (7th Cir. 2018) (affirming ALJ who did not include leg elevation limitation where the "recommendation was a temporary measure"); *see also Monique B. v. Saul,* No. 19 C 652, 2020 WL 4208112, at *11 (N.D. Ill. July 22, 2020) ("True, Monique did receive a recommendation that she elevate her legs in April 2017. Yet, Monique has failed to demonstrate that the April 2017 recommendation was anything more than a temporary suggestion for her then-present edema and vertigo. At any rate, although the ALJ did not discuss the April 2017 leg elevation explicitly, the ALJ's decision indicates that he reviewed the April 2017 treatment record containing the leg elevation recommendation, and this Court will not reweigh the evidence.") (internal citations omitted).

### 2.   Cane Use

Mr. K next argues that the ALJ erroneously found no objective evidence in the record showing any medical need for a cane. (AR 16). Mr. K contends that he provided

testimony that he walked assisted by a cane per doctor's orders. (AR 61) and that he did so before his surgery and after his surgery. (AR 58). He also testified that he was advised by his physician to rely on the cane more often when ambulating. (AR 61). Mr. K also points to a May 18, 2022, treatment note showing that Mr. K was educated on proper technique to ascend and descend steps with rail and cane (AR 629) and that he was instructed to continue ambulation at home with a walker or cane as tolerated. (AR 623). Moreover, Mr. K contends that he experienced extreme pain in his extremities and swelling post-surgery. (AR 65-66, AR 630). Mr. K contends that the ALJ must address a need to ambulate with a cane, citing *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) (non-precedential decision), and contends that the ALJ did so here with only a conclusory statement.

The ALJ did review the available record in connection with the cane, and the record included Plaintiff's July 2022 testimony that he was using a walker after his surgery and was using a cane at times before his lumbar fusion on May 18, 2022. (AR 14). But the ALJ also noted that Mr. K did not use the cane every day and that he had fibroma removed from his feet on September 15, 2021. The ALJ thus stated that by October 7, 2021, Mr. K was told he could go back to regular shoes and weight-bearing as tolerated and only needed to see his podiatrist on an as-needed basis. (AR 16). Like Mr. K notes on review, the ALJ also discussed that Mr. K used a walker after his May 18, 2022, lumbar surgery. (AR 16, 624). But the ALJ also stated she found no indication that his need for a walker would last 12 months or longer. (AR 16-17).

In addition, the ALJ reviewed Mr. K's June 2022 physical therapy goals (AR 15-16) and observed that, within a twelve-month period after surgery Mr. K was anticipated to improve. (AR 15-16). After a thorough review of the record, the ALJ said that she "d[id] not see objective evidence in the record indicating any medical need for a cane" (AR 16). Finally, the ALJ noted that consulting physician Dr. Scott Ehmen also found no need for an ambulatory device (AR 16-17).

This Court concludes that the ALJ's analysis was reasonable and therefore does not support Mr. K's request for a remand. Under SSR 96-9p, it is the plaintiff's burden to show that a cane or other assistive device is "medically necessary." As contended by the Commissioner, most of the evidence regarding Mr. K's cane use was self-reported, post-operative, or a treatment note observing that he was using a cane. *See Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (non-precedential decision) (affirming RFC without cane usage where cane references were "traceable to [plaintiff's] self-reports and to physicians' observations that he presented with an assistive device"). Moreover, here, the consulting physician observed plaintiff without a cane, and it was Dr. Ehmen's opinion that Mr. K did not use a cane. (AR 444). This case is thus distinguishable from the case in which Mr. K relies, *Thomas v. Colvin*, 534 F. App'x at 550. There, the Seventh Circuit remanded a case when an ALJ ignored a cane prescription with a doctor's note describing repeated falls, reports of other doctors noting cane use, the plaintiff's use of a cane at her hearing, and her testimony about needing it. *See id.* By contrast, Mr. K's need for a cane was only supported by subjective evidence. *See Tripp*, 489 F. App'x at 955.

The ALJ reviewed the available record related to Mr. K's use of a cane and concluded that the cane was not a medical necessity. The ALJ's determination of Mr. K's use of a cane is supported by substantial evidence in the record and the Court will not reweigh the evidence.

### 3. Mr. K's Part-Time Work

Next, Mr. K argues that the ALJ's consideration of his part-time work at Culver's was error. Mr. K contends that the ALJ partly found that Mr. K could work eight hours each day for 40 hours a week because Mr. K had part-time work, even though his part-time work consisted of only four-hour shifts for 15 hours each week. [DE 16 at 10]. Mr. K contends that the ALJ erroneously found his part-time work to be consistent with an RFC for light work. The Commissioner argues that the ALJ reasonably considered Mr. K's part-time work experience at Culver's in the RFC determination. [DE 20 at 12].

Review of the ALJ's decision shows that the ALJ was reasonable in her consideration of Mr. K's part-time work. First, the Court cannot find that the ALJ equated Mr. K's ability to work a fifteen-hour work week with an ability to work full-time. Rather, the ALJ considered one aspect of Mr. K's part-time work—that it required four hours of standing/walking — to be consistent with her conclusion that he retained an RFC to engage in light work with four hours of standing/walking. (AR 15-16, 18). At the hearing, the Plaintiff testified about his work at Culver's, and he was questioned by the ALJ. He testified that he could use a stool to sit taking orders but was also able to get up "throughout the process, so it wasn't just seated the whole time…" (AR 59). The ALJ reviewed the available record related to Mr. K's part-time employment at Culver's

and concluded that the evidence supported an RFC finding of four hours of standing and walking during light work. The ALJ's conclusion is substantially supported by the record.

### 4. Mr. K's Physical Therapy Goals

Mr. K next argues that the ALJ failed to construct a logical bridge from Mr. K's physical therapy goals and her conclusion that he could perform light work. Mr. K argues that the ALJ's RFC determination is based on speculation instead of substantial evidence. The Commissioner argues in response that the ALJ reasonably found that Mr. K could be anticipated to improve to meet these goals and that no doctor stated otherwise. [DE 20 at 13, *citing* AR 15-16].

The Court begins by reviewing the ALJ's discussion on this point. The ALJ acknowledged that Mr. K underwent a lumbar fusion on May 18, 2022, and was using a walker immediately after this surgery. The ALJ also discussed that Mr. K began physical therapy on June 13, 2022, about a month after his lumbar fusion surgery. The ALJ also noted that Mr. K's physical therapy goals included walking with a normal gait and without an assistive device for at least 600 feet, getting dressed without assistive devices, and grocery shopping without having to rest. [DE 16 at 12, *citing* AR 15]. The ALJ concluded her discussion of these goals by stating

> His goals were set three to six weeks out (Exhibit 20F). There is no indication that [Mr. K] would be unable to do these sorts of functions within at least 12 months. I accounted for the claimant's chronic back pain status post lumbar spine surgery with the above defined less than light residual functional capacity. It is anticipated that the claimant will continue to improve after his surgery over the next 12 months. No doctor suggested otherwise. (AR 15-16).

This Court concludes that the ALJ was reasonable in her consideration of the Plaintiff's physical therapy goals, especially considering that the ALJ was discussing these goals in the context of Mr. K's use of a post-surgical walker. The ALJ reasonably concluded that Mr. K could be expected to improve to meet the goals and that no doctor stated otherwise. (AR 15-16). *See Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (observing that "we give [an ALJ's] opinion a commonsensical reading rather than nitpicking at it") (quoting *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)). Without more from Mr. K, the Court cannot find that the ALJ's discussion of physical therapy goals requires remand.

### 5.     Mr. K's Daily Activities and Treatment

Finally, Mr. K argues that the ALJ's evaluation of daily living and treatment violated SSR 16-3 and was not supported by substantial evidence. When crafting a claimant's RFC, an ALJ must follow a two-step sequential process to determine whether a claimant's symptoms can be accepted as consistent with objective medical evidence and other evidence. First, the ALJ must determine whether there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms. Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *See* 20 C.F.R. § 416.929(a). The

ALJ evaluates the intensity, persistence, and limiting effects of symptoms by considering subjective statements about symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* 20 C.F.R. § 404.1529(a). Relevant factors include:

> (1) The individual's daily activities;
> (2) Location, duration, frequency, and intensity of pain or other symptoms;
> (3) Precipitating and aggravating factors;
> (4) Type, dosage, effectiveness, and side effects of any medication;
> (5) Treatment, other than medication, for relief of pain or other symptoms;
> (6) Other measures taken to relieve pain or other symptoms;
> (7) Other factors concerning functional limitations due to pain or other symptoms

*See id*. § 404.1529(c)(3). Thus, as Mr. K contends, two of the factors to consider are daily activities and treatment.

This analysis must focus on "the extent to which the symptoms reduce the individual's capacity to perform work-related activities." *Wade v. Berryhill*, No. 2:17-CV-278, 2018 WL 4793133, at *10 (N.D. Ind. Oct. 4, 2018) (citing SSR 16-3p). The ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish their capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(c)(4). So long as the ALJ gives specific reasons supported by the

record, the Court will not overturn this determination unless it is "patently wrong." *See Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).

### a. Daily Activities

Mr. K first maintains that the record demonstrated that he performed few activities of daily living and those that he performed were with qualifications. *(Id.)* Mr. K highlights activities such as using a cart when shopping, his limited ability to drive, and the need to stand and stretch from a seated position. [DE 16 at 13, *citing* AR 58, AR 35]. Mr. K contends that the ALJ never explained if or how she considered these activities before relying on them as evidence not entirely consistent with his subjective allegations.

The Commissioner makes two arguments in response. First, the Commissioner argues that the ALJ did consider Mr. K's daily activities but did not equate them full-time work or otherwise place undue emphasis on these activities. It is true that critical differences exist between performing activities of daily living and working a full-time job. For instance, when performing activities of daily living, individuals have more flexibility and can secure assistance from others to complete their intended tasks unlike when they work full-time and must meet a minimum standard of performance. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). As a result, courts have cautioned against an exaggerated reliance on the ability to perform daily activities but still finds information about daily activities relevant in evaluating conflicting evidence about a claimant's limitations. *Chambers v. Saul*, 861 F. App'x 95, 101 (7th Cir. 2021) (citing *Bjornson*, 671 F.3d at 647 (collecting cases)).

17

But here, Mr. K is arguing the opposite—that his daily activities were consistent with his allegations of pain and disabling symptoms, and that the ALJ failed to adequately consider them. As to this, the Commissioner contends that, even if the ALJ failed to properly consider his daily activities, this alone does not warrant remand. "Not all of the ALJ's reasons must be valid as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) (emphasis in original); *Sanders v. Astrue*, 894 F. Supp. 2d 1100, 1112 (N.D. Ind. Sept. 6, 2012) (the ALJ gave other sound reasons for finding the claimant not entirely credible such that error related to treatment gaps was harmless). Here, the ALJ did consider the Plaintiff's statements about his limited daily living activities. (AR 14). The ALJ discussed the Plaintiff's statements about his activities of daily living, including that "he could not do much around the house." (AR 14). The ALJ elaborated that Mr. K testified that "he would get the laundry ready and load the dishwasher, and otherwise, he would recline with his feet up or lie in bed." (*Id.*) The ALJ also discussed Mr. K's four-hour shifts including at Culver's. Though the ALJ did not specifically state that Mr. K's daily activities were limited or done with qualification, the ALJ discussed these activities in context of Mr. K's qualifications. The ALJ also provided other reasons for discounting Mr. K's subjective symptoms. Without more, the Court cannot find remand appropriate on this basis. *See Walcott v. Berryhill*, No. 1:18-CV-988-JPH-MPB, 2019 WL 2494165, at *8 (S.D. Ind. Feb. 5, 2019) ("Even if this court were to hold that the ALJ should have expressly addressed Plaintiff's activities, any error was harmless because the ALJ provided other reasons for discounting

Plaintiff's subjective complaints."); *see also Thomas S. v. Kijakazi*, No. 1:22-cv-270, 2023 WL 2783196, at *6 (N.D. Ind. Apr. 5, 2023).

### b. Treatment

Mr. K also challenges the ALJ's consideration of his treatment history. Mr. K explains that he underwent lumbar fusion and surgery to remove plantar fascial fibromatosis and that he was prescribed Tramadol, an opioid pain medication. (AR 567). Still, Mr. K maintains, the ALJ did not discuss the significance of this treatment, and had she done so, she would have concluded that such treatment was consistent with Mr. K's allegation of debilitating pain and symptoms. In response, the Commissioner contends that the ALJ discussed his treatment history in detail—discussing his remote fusion surgery in 2003, his partial knee replacement in 2015, his September 2021 procedure to remove fibroma from his feet, and his May 2022 lumbar fusion surgery at the L2-L3 level.

The Court agrees that the ALJ adequately discussed Mr. K's treatment history in finding that Mr. K's statements about his symptoms were inconsistent with the evidence. Without more, the Court cannot find that her determination was "patently wrong." *Deborah M.*, 994 F.3d at 789.

## IV. Conclusion

For these reasons, the ALJ's decision to deny Mr. K's applications is supported by substantial evidence. The role of this Court is not to reweigh the evidence on which the ALJ based her conclusion, but rather to determine whether the ALJ relied on the correct legal standards and whether her conclusion is supported by substantial

evidence. Based on the record, including the transcript of Mr. K's testimony, and the detailed order written by the ALJ supporting her conclusion, the decision of the ALJ denying Mr. K's applications for DIB and SSI is **AFFIRMED.**

**SO ORDERED** this 14th day of March 2025.

                                              s/Scott J. Frankel
                                              Scott J. Frankel
                                              United States Magistrate Judge